IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED
04 JAN 30 PM 2:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| LaQUARIUS GRAY, a minor, by and through her mother and next friend, TONIKO L. ALEXANDER,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>ANTONIO BOSTIC, individually and in his official capacity as Deputy Sheriff; EDMUND SEXTON, individually and as Sheriff of Tuscaloosa County, AL; JOYCE HARRIS, individually and as Principal of Holt Elementary School; JOYCE SELLERS, individually and as Principal; FRANKIE THOMAS, JAMES BARNETT, JAMES JUNKIN, MORRIS ACKER, DON PRESLEY, DOT SMITH, and PAM GARNER, individually and as members of the Tuscaloosa County Board of Education,<br><br>　　　　　　　　　Defendants. | Civil Action Number<br>03-C-2989-W<br><br>**ENTERED**<br>FEB - 2 2004 |

**MEMORANDUM OPINION GRANTING MOTIONS TO DISMISS**

　　On March 7, 2003, Plaintiff LaQuarius Gray was a nine-year old student of Holt Elementary School, operated by the Tuscaloosa County Board of Education. While attending her physical education class in the gymnasium, Plaintiff and her teacher "had a disagreement over whether [she] had completed the [assigned] 'jumping jack' exercises...." Complaint, p. 4. During the course of their verbal exchange, Plaintiff made certain "disrespectful

comments" to her teacher. *Id.* Another teacher who witnessed the incident instructed the Plaintiff to come over to her so that they could talk about Plaintiff's comments. While complying with this request, Plaintiff was intercepted by Defendant Tuscaloosa County Deputy Sheriff Antonio Bostic, who also was present when the incident occurred. Bostic then instructed the second teacher that he, in effect, would take over the matter.[1]

Whereupon, Bostic directed the Plaintiff to accompany him to a doorway of the gymnasium. When she arrived at the doorway, Bostic grabbed the Plaintiff's wrists, hands, and arms and placed them behind her back. He then handcuffed the Plaintiff for roughly ten minutes. While she was handcuffed, Bostic told her: "this is what happens to people when they break the law," and "this is how it feels to be in jail." *Id.,* p. 5.

More than twenty of the Plaintiff's friends, acquaintances, and classmates observed her in handcuffs.

The Plaintiff suffered physical pain in her wrists, hands, and arms; and she was subjected to severe embarrassment, public humiliation, and continuing mental anguish - to the point of recurring crying spells and nightmares. She is intimidated by the sight of uniformed law enforcement officials. Based on her traumatic emotional experience at Holt Elementary School, she has transferred to another school for the present school year.[2]

The Plaintiff brought this action under 42 U.S.C. § 1983 ("§ 1983") against Bostic,

---

[1] At the time of the incident, Bostic was on-duty as a uniformed deputy sheriff. He had been assigned to duties at Holt Elementary School, presumably for security reasons.

[2] All of the foregoing "facts" are taken from the Plaintiff's complaint. They are "facts" only for the purpose of the Defendants' motion to dismiss this case.

the Tuscaloosa County Sheriff, the principal of Holt Elementary School, the superintendent of the Tuscaloosa County School System, and the members of the Tuscaloosa County Board of Education, all in their individual and official capacities.[3] The Plaintiff alleges that these defendants violated her rights under Alabama law as well as the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

The remaining Defendants (Deputy Sheriff Bostic and Sheriff Edmund Sexton) have moved to dismiss the Plaintiff's complaint, based on the doctrines of official immunity and qualified immunity.

Because of the settled law in this Circuit, this judge regretfully concludes that based on the allegations of the complaint, the motion to dismiss must be granted.

## The Legal Standards

For purposes of a motion to dismiss, all of the facts alleged in a complaint are deemed to be true, and those facts must be construed in a light most favorable to the plaintiff. *Hishon v. King & Spaulding,* 467 U.S. 41, 45-46 (1984). It is hornbook law that unless it appears beyond doubt that the plaintiff can prove *no* set of facts which would entitle her to relief, a complaint may not be dismissed.

Alabama sheriffs are executive officers of the State, and, like the State itself, they are *absolutely immune* from lawsuits for damages based on their official acts. *See,* Alabama Constitution of 1901, Art. V, § 112; Art. I, § 14; *Lancaster v. Monroe County, Alabama,*

---

[3] The Plaintiff has subsequently dismissed her claims against the principal, superintendent, and school board members in both their individual and official capacities. Court File Document ("Doc") 17.

116 F.3d 1419, 1429 (11th Cir.1997). This immunity also extends to deputy sheriffs sued in their official capacities under § 1983. *See, Carr v. City of Florence, Alabama,* 916 F.2d 1521 (11th Cir.1990).

To state law claims, a sheriff and his deputies are absolutely immune from liability arising from intentional and/or negligent acts committed in the line and scope of their employment. *See, Ex parte Purvis,* 689 So.2d 794, 796 (Ala.1996); *Alexander v. Hatfield,* 652 So.2d 1142, 1144 (Ala.1994). Individual-capacity state law claims against sheriffs and their deputies are likewise barred by the doctrine of sovereign immunity. *McMillian v. Johnson,* 101 F.3d 1363, 1365 (11th Cir.1996); *Tinney v. Shores,* 77 F.3d 378 (11th Cir.1996).

On federal claims, the doctrine of "[q]ualified immunity protects government officials performing discretionary functions ... from liability if their conduct violates not 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A&M Univ. Bd. of Trustees,* 28 F.3d 1146 (11th Cir.1994) (*en banc*). The purpose of this immunity is to permit government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *See, Anderson v. Creighton,* 483 U.S. 632, 638, 107 S.Ct. 3034, 3038 (1987). This immunity protects from § 1983 lawsuits "all but the plainly incompetent or one who is knowingly v4iolating federal law." *Willingham v. Laughnan,* 261 F.3d 1178, 1187 (11th Cir.2001).

In qualified immunity jurisprudence, the initial inquiry is whether the public official was acting within the scope of his discretionary authority at the time of the incident on which the lawsuit is based. The burden of proof on this issue on the defendant. *Lee v.*

*Ferraro,* 284 F.3d 1188, 1194. (11th Cir. 2002).

Once the defendant establishes that he was acting within his discretionary authority, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1366-67 (11th Cir.1998); *Hudson v. Hall,* 231 F.3d 1289, 1294 (11th Cir.2000); *Rodriguez v. Ferrell,* 280 F.3d 1341 (11th Cir.2002). The first leg of the remaining two-prong inquiry is this: did the defendant's conduct, taken in a light most favorable to the plaintiff, violate a constitutional right? If the plaintiff's version of the facts as outlined in the complaint establish that a constitutional right was violated, then the inquiry focuses on whether this constitutional right was "clearly established" at the time of the defendant's conduct. *Durruthy v. Pastor,* 351 F.3d 1080, 1087 (11th Cir.2003).

## Analysis

Although this Court finds Deputy Sheriff Bostic's conduct to be reprehensible, the Plaintiff has not identified a single federal case for the proposition that the handcuffing of a student by a law enforcement official for ostensibly pedagogical reasons violates the federal Constitution.[4]

The Court has unearthed several cases which speak in general terms to the constitutional issue posed by this case, but they are not helpful to the Plaintiff's position. In

---

[4] Plaintiff cites *Cottone v. Jenne,* 326 F.3d 1352 (11th Cir.2003) and *Skrtich v. Thornton,* 280 F.3d 1295 (11th Cir.2002) apparently for this proposition. Plaintiff's Brief, p. 2. But *Cottone* involved the death of a pretrial detainee at the hands of a mentally ill co-inmate; and *Skrtich* involved a prison inmate's claim of excessive force. These cases are simply inapposite.

*Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir.2002), the handcuffed the plaintiff before placing her under arrest. The Circuit held that this conduct was not violative of the Constitution; any injury sustained was *de minimus* and not excessive. *Id.,* at 1349. *See also, Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000) (plaintiff was shoved against a vehicle and handcuffed); *Gold v. City of Miami,* 121 F.3d 1442 (11th Cir.1997) (plaintiff was handcuffed too tightly and too long); *Post v. City of Fort Lauderdale,* 7 F.3d 1552 (11th Cir.1993) (officer pushed plaintiff against a wall while plaintiff was handcuffed). In none of these cases did the court find a constitutional right not to be handcuffed too tightly or too long, in the absence of an allegation that the handcuffing was undertaken sadistically or for the very purpose of causing physical harm.

Since the Plaintiff has not shown that a constitutional right was violated, it follows that no such right was clearly established as of the date on which she was handcuffed by Defendant Bostic.

For these reasons, the Motion to Dismiss will be granted, and the case will be dismissed by separate order.

Done this 30th day of January, 2004.

Chief United States District Judge
U.W. Clemon