FILED
2012 Mar-05  AM 11:19
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **LAQUARIUS GRAY, a minor,** | ) | |
| **by and through her mother and** | ) | |
| **next friend, Toniko L. Alexander,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Number |
| | ) | **7:03-cv-2989-UWC** |
| **vs.** | ) | |
| | ) | |
| **ANTONIO BOSTIC and** | ) | |
| **EDMUND SEXTON,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is on remand from the Eleventh Circuit Court of Appeals which vacated this court's award of attorney's fees.[1]  In light of the Eleventh Circuit's mandate, the court ordered the parties to re-brief the attorney's fee issue.  Doc. 132.  Therefore, before the court is Plaintiff Laquarius Gray's ("Gray") Motion for Attorney's Fees.  Doc. 133.  Defendant Antonio Bostic ("Bostic") responded, doc. 134, and this matter is ripe for resolution.  As set out more fully below, Gray's motion for attorney's fees is **GRANTED** in part.

---

[1] On its own motion, the Eleventh Circuit rescinded their "earlier opinion in this case, *see Gray ex rel. Alexander v. Bostic*, 570 F.3d 1321 (11th Cir. 2009), and replace[d] it with this one."  Doc. 131, at 3.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

As relevant background, Gray was nine years old and in the fourth grade when she failed to complete a jumping jacks exercise in a physical education class. Coach Lattuce Greer Williams ("Coach Williams") instructed Gray to come to the gym wall, and as Gray approached, she threatened Coach Williams.  Coach Tara Horton ("Coach Horton") observed the altercation and instructed Gray to come to her.  Deputy Antonio Bostic ("Bostic"), a school resource officer employed by the Tuscaloosa County Sheriff's Department, also witnessed the incident between Coach Williams and Gray.  Despite some protest by Coach Horton, Bostic insisted on talking to Gray about the incident and escorted her out of the gym.  Once outside of the gym, Bostic instructed Gray to put her hands behind her back, and he then handcuffed her.  Gray remained handcuffed for not less than five minutes. Neither Coach Williams nor Coach Horton perceived Gray as a threat.  *See Gray ex rel. Alexander v. Bostic* ("*Gray II*"), 458 F.3d 1295, 1300-02 (11th Cir. 2006).

On November 4, 2003, by and through her mother, Gray filed a lawsuit against Bostic and the Tuscaloosa County Sheriff, Edmund Sexton ("Sexton"), in their official and individual capacities, alleging (1) First, Fourth, Fifth, Eighth, and Fourteenth Amendment violations under 42 U.S.C. § 1983, (2) race discrimination under 42 U.S.C. § 1981, and (3) violations of state law for invasion of privacy,

assault and battery, false imprisonment, defamation and intentional infliction of emotional distress, and seeking declaratory and injunctive relief.  Doc. 1. Defendants filed a motion to dismiss, which the court granted.  Doc. 18.  Gray appealed, challenging only the dismissal of her Fourth Amendment claims against Bostic and Sexton individually.  The Eleventh Circuit Court of Appeals reversed and remanded the case to this court ordering Gray to amend her complaint to assert only Fourth Amendment claims.  Doc. 28.  After Gray amended her complaint, doc. 35, this court subsequently denied Defendants' motion for summary judgment on the Fourth Amendment claims.  Doc. 63.  Defendants filed an interlocutory appeal, doc. 64, where the Eleventh Circuit affirmed this court's denial of summary judgment on Gray's illegal seizure claim against Bostic in his individual capacity, but reversed this court's denial of summary judgment on Gray's claims against Sexton.  Doc. 73.  Gray ultimately prevailed at trial on her Fourth Amendment illegal seizure claim against Bostic, although the jury only awarded her $1 in damages.  Doc. 97.

On July 29, 2008, this court awarded Gray's counsel $70,532.93 in attorney's fees, doc. 118, and Bostic appealed the award, doc. 119.  On August 2, 2010, the Eleventh Circuit upset the court's sound discretion to decide attorney's fees and vacated the award of fees, citing as its reasons an abuse of discretion and

a failure to apply the proper legal standards.  Doc. 131 at 5-6.  The Eleventh

Circuit remanded this matter with instructions "for the district court to decide . . .

whether the plaintiff is entitled to an award of attorney's fees and expenses under

42 U.S.C. § 1988 even though she recovered only nominal damages; and, if so,

whether she is entitled to an enhancement for delay in the payment of expenses

and to an enhancement for delay in the payment of attorney's fees; and, if so, how

much."  Doc. 131, at 22.

## II.  STANDARD FOR AWARDING ATTORNEY'S FEES IN NOMINAL DAMAGES CASES

Attorneys fees are available under 42 U.S.C. § 1988 to the prevailing party

of a § 1983 claim, that is, to a plaintiff "when actual relief on the merits of his

claim materially alters the legal relationship between the parties by modifying the

defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v.

Hobby*, 506 U.S. 103, 111-12 (1992).  A "plaintiff who wins nominal damages is a

prevailing party under § 1988."  *Id*. at 112.  However, "[i]n some circumstances,

even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's

fees at all.  A plaintiff who seeks compensatory damages but receives no more

than nominal damages is often such a prevailing party."  *Id*. at 115.  "That is not to

say that *all* nominal damage awards are *de minimis*" or not worthy of receiving

attorney fees.  *Id*. at 121 (O'Connor, J., concurring) (emphasis in original).  Put

differently, receiving nominal damages does not automatically require a denial of attorney's fees.  In determining what is "reasonable" for § 1988 purposes, an award of nominal damages "*usually* [means] no fee at all," *id.* at 115 (emphasis added), but "[n]ominal relief does not necessarily a nominal victory make," and a court awarding fees for nominal damages must consider three factors.  *Id.* 121-22 (O'Connor, J., concurring).

First, "a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical" or not worthy of receiving fees.  *Id.* at 121.  Yet this first factor is not dispositive because almost every plaintiff will seek damages substantially greater than nominal damages.  *See Mercer v. Duke Univ.*, 401 F.3d 199 (4th Cir. 2005).  Accordingly, the court must also consider "the significance of the legal issue on which the plaintiff claims to have prevailed."  *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring).  Finally, the court must analyze whether the "victory" accomplished "some public goal."  *Id.* Stated differently, whether the underlying litigation "is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory."  *Id.*[2]

---

[2] In the order vacating the award of fees and remanding the issue back to this court, the Eleventh Circuit admonished certain considerations taken by this court in determining whether to award fees.  Doc. 131, at 9-12.  Specifically, when considering O'Connor's *Farrar* factors, a district court should only utilize cases that cite the relevant legal precedent to establish that such

### III.  ANALYSIS FOR AWARDING ATTORNEY'S FEES

Before the O'Connor *Farrar* factors are specifically addressed, it is necessary to establish that the current case is not factually aligned with *Farrar*, and it is more analogous to the factual situation presented in *City of Riverside v. Rivera*, 477 U.S. 561 (1986).  Significantly, the relevance of such distinction is that the current case properly fits into *Farrar*'s exception—the awarding of attorney's fees even though the plaintiff only received nominal damages.

The plaintiffs in *Farrar* owned and operated a school for delinquent, disabled, and disturbed teens.  In 1973, the state indicted one of the plaintiffs for murder after a student died due to alleged "willful failure to administer proper medical treatment and failure to provide timely hospitalization."  506 U.S. at 105. After the state shut down plaintiffs' school, plaintiffs filed suit against the state officials responsible for the school's closing.  "The complaint alleged deprivation of liberty and property without due process by means of conspiracy and malicious

---

legal precedent is indeed significant.  *Id.* at 11.  Moreover, the Court of Appeals stated that a district court may not assert that civil rights cases are inherently unattractive to attorneys and therefore ripe for awarding fees when plaintiff only receives nominal damages.  *Id.* at 12.  The court stated that such an argument flew in the face of *Farrar* which established that awarding fees when plaintiff receives nominal damages should be the exception, not the rule.  Finally, the Eleventh Circuit found that a district court abuses its discretion if it attempts to award fees based on a disagreement with the jury verdict of nominal damages only.  *Id.* at 13.  Having read the Eleventh Circuit's opinion, Judge U.W. Clemon's opinion, and the parties' various briefs on the attorney's fees issue, the undersigned grants, in part, Gray's motion for attorney's fees for reasons separate and distinct than those Judge Clemon relied on to grant Gray's motion.

prosecution" and sought $17 million in damages. *Id.* at 106. The jury found no liability, except that it found that defendant William Hobby, the then Lieutenant Governor of Texas, had deprived plaintiff Joseph Farrar of a "civil right." However, the jury refused to award damages for this violation because "it found that Hobby's conduct was not 'a proximate cause of any damages' suffered by Joseph Farrar." *Id.* (citations omitted). On appeal, based on the jury's finding of an unspecified civil rights violation, the Fifth Circuit remanded in part to the district court for entry of a nominal judgment against Hobby. *Id.* at 107. On remand, the district court "entered an order awarding $280,000 in fees, $27,932 in expenses, and $9,730 in prejudgment interest against Hobby." *Id.* Hobby again appealed, and the Fifth Circuit reversed.

Farrar subsequently filed a certiorari petition which the Court granted to address whether a plaintiff who wins nominal damages is a "prevailing party" under § 1988 and therefore entitled to fees and costs. *Id.* at 103, 107-08. The Court determined that Farrar did "prevail" in these proceedings insofar as he received nominal damages, but that the "litigation accomplished little beyond giving [Farrar] 'the moral satisfaction of knowing that a federal court concluded that [his] rights had been violated' in some unspecified way." *Id.* at 114 (citing *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)). Stated simply, Farrar prevailed only

in the sense that the court awarded him nominal damages.  His litigation offered

nothing to the vindication of civil rights because the litigation never defined the

specific civil right violated.  His "victory" was a technicality and was "not the kind

of legal change that Congress sought to promote in the fee statute [§ 1988]."  *Id.* at

119 (O'Connor, J., concurring).  Accordingly, "[a]lthough the Court of Appeals

erred in failing to recognize that petitioners were prevailing parties," the Court

affirmed the Fifth Circuit's reversal of the district court's fee award.  *Id.* at 116.

Conversely, the litigation in *City of Riverside v. Rivera* offered the type of

legal change warranting attorney's fees for the prevailing plaintiffs.  The plaintiffs

in *Rivera* attended a party where a "large number of unidentified police officers,

acting without a warrant, broke up the party using tear gas and, as found by the

District Court, unnecessary physical force."  477 U.S. at 564 (citations and

quotation marks omitted).  After the district attorney dropped all criminal charges

against plaintiffs due to lack of probable cause, plaintiffs filed suit alleging,

among other things, § 1983 claims for First, Fourth, and Fourteenth Amendment

violations.  The jury returned 37 individual verdicts, including 11 violations of §

1983, and awarded plaintiffs $33,350 in damages.  *Id.* at 565.  The district court

also awarded plaintiffs $245,456.25 in attorneys fees, which the defendants

appealed, eventually arguing to the Supreme Court that such an award

unreasonably and disproportionately exceeded the amount of damages recovered. *Id.* at 565-67.  The Court disagreed, affirmed the award of attorney's fees under § 1988, and held that the "amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded . . . . It is, however only one of the many factors that a court should consider in calculating an award of attorney's fees." *Id.* at 574.[3]  The Court continued that "a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *Id.* at 575.  Specifically, "a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone, but also as a private attorney general, vindicating a policy that Congress considered of the highest importance." *Id.* (internal quotations marks and citations omitted).

The court now turns to the facts before it to ascertain whether Gray vindicated and advanced significant rights.  In addressing Justice O'Connor's *Farrar* factors for awarding attorney's fees, this court must discern whether the award of attorney's fees are unreasonable because Gray obtained only a "moral satisfaction" victory in that the courts simply concluded that Bostic violated unspecified civil rights, or whether Gray is more aptly considered a "private

---

[3] The court recognizes that *Rivera* pertains to the calculation of attorney's fees; however, the Court's language is relevant because the rationale for calculating the amount of fees does not differ from whether or not to award fees at all—both undertake a "reasonableness" inquiry.  *See Farrar*, 506 U.S. at 118-19 (O'Connor, J., concurring).

attorney general" because her litigation advanced significant legal issues regarding civil rights and liberties.  If the latter, then it is reasonable to award attorney's fees.

A.      *Difference Between Judgment Recovered and Recovery Sought*

The first *Farrar* factor, i.e. the difference between Gray's actual verdict versus what she requested at trial, weighs against the award of attorney's fees.  *See Mercer*, 401 F.3d at 206.  Gray asked for $25,000,[4] and the jury only awarded her $1.  Doc. 133, at 3.  While this disparity is not as great as the disparity in *Farrar* ($17 million request and $1 recovery), there is still a substantial difference in the judgment recovered and what Gray sought.  Moreover, the "success obtained" or, stated differently, the amount recovered in damages, is certainly "the most critical factor in determining the reasonableness of a fee award."  *Farrar*, 506 U.S. at 114.  Accordingly, this factor sets the general rule—it is usually unreasonable to award attorney's fees when the plaintiff only receives nominal damages.

B.      *Significance of the Legal Issue*

The second *Farrar* factor, i.e. the significance, if any, of the legal issues, suggests that an award of nominal damages can also "represent a victory in the

---

[4] Bostic asserts that Gray actually demanded $40,000.  Doc. 134, at 7.  The court finds that this factor favors Bostic regardless of whether the recovery sought was $25,000 or $40,000.

sense of vindicating rights even though no actual damages are provided." *Id.* at

121 (O'Connor, J., concurring).  "This factor is concerned with the general legal

importance of the issue on which the plaintiff prevailed." *Mercer*, 401 F.3d at

206.  As provided by the Eleventh Circuit, doc. 131, at 10, the legal issue decided

by this litigation, *see Gray II*, 458 F.3d at 1307, is that "a law enforcement officer,

acting as a school resource officer, who 'handcuff[s] a compliant nine-year-old

child for purely punitive purposes' has unreasonably seized the child in violation

of the Fourth Amendment."  Doc. 131, at 10.  The court disagrees with Bostic's

contention that the legal issue reached in *Gray II* is insignificant.  *See* doc. 134, at

7.  To the contrary, as shown below, Gray changed the law and announced a rule

that has benefitted other students.  Therefore, this factor weighs in favor of

granting attorney's fees.

　　　First, Gray prevailed on a significant issue in *her* litigation.  Gray

demonstrated not only that Officer Bostic violated the Fourth Amendment, but

also that Officer Bostic was not entitled qualified immunity.  *See Gray II*, 458 F.3d

at 1305-07.  By succeeding on her primary claim of a Fourth Amendment

violation, *see* doc. 35, Gray's individual constitutional rights were specifically

addressed and vindicated.  Moreover, unlike the plaintiff in *Farrar* who only

prevailed against the "least culpable defendant," 506 U.S. at 121 (O'Connor, J.,

concurring), Gray prevailed against the most culpable defendant—the defendant that actually (as opposed to vicariously) violated her constitutional rights.

Second, in addition to vindicating her own rights, Gray also impacted those of other students.  Indeed, the Eleventh Circuit's order to vacate and remand, doc. 131, appears to instruct that the court should also focus on the external significance of the legal issue decided in the litigation.  *Id.* at 7.  From this perspective, *Gray II* has two significant implications: (1) it establishes an "unreasonable" action that violates a child's Fourth Amendment rights in the schoolhouse, *see New Jersey v. T.L.O.*, 469 U.S. 325 (1985), and (2) it provides a rare "obvious" Fourth Amendment violation that creates "clearly established law" for qualified immunity litigation.

In *T.L.O.*, the Court established that while the Fourth Amendment applies in the school setting, the proper standard for a search or seizure in that setting is "reasonableness" which "stops short of probable cause."  469 U.S. at 341.  The Court stated that "a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342.  In *Gray II*, the court found that Bostic's actions violated the reasonableness standard enunciated in *T.L.O.* because "handcuffing Gray was not

reasonably related to the scope of the circumstances that justified the initial investigatory stop.  Rather, the handcuffing was excessively intrusive given Gray's young age and the fact that it was not done to protect anyone's safety."  458 F.3d at 1306.

Significantly, *Gray II* is the first Eleventh Circuit case to find a seizure "unreasonable" in the school setting.  The legal importance for this holding is that "where the applicable legal standard is a highly general one, such as 'reasonableness,' preexisting caselaw that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 954 (11th Cir. 2003).  *Gray II* is the only marker delineating the constitutional line in the Eleventh Circuit for reasonable seizures in the schoolhouse.  Accordingly, even though Gray received nominal damages, her litigation is still significant because it provided notice to school officials on what conduct actually violates the Fourth Amendment.  This notice, in turn, vindicates the rights of school children who are now protected, at a minimum, by a clear line of constitutionally impermissible behavior.

Moreover, the legal issue decided in *Gray II* significantly aids qualified immunity litigation in future cases.  Qualified immunity protects government

officials from lawsuits pertaining to actions taken while performing discretionary official functions. *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 823 (11th Cir. 1997).  However, immunity does not attach when official conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Clearly established law" is demonstrated by "factually similar case law" and "when the constitutional violation is obvious." *Gray II*, 458 F.3d at 1306. Applying these principles reveals that where, as here, official conduct goes "well beyond the hazy border that sometimes separates lawful conduct from unlawful conduct," *Gray II* offers a precedential example of conduct "that every objectively reasonable officer would have known" violates the Constitution. *Id.* at 1307 (citations omitted).

   *Gray II*'s specific and detailed example of conduct that is obviously unconstitutional is legally significant for governmental officials and courts alike. Officials, especially school resource officers, are provided with a guidepost to help conform their conduct to constitutional standards.  Moreover, lower courts are provided with a more robust and well-defined concept of what constitutes "obviously" unconstitutional conduct.  Put differently, *Gray II* can be used as "clearly established law" for a variety of search and seizure cases in the school

context.  *See Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (noting that

a "judicial precedent with materially *identical* facts is not essential for the law to

be clearly established") (emphasis added).  Indeed, the legal significance is

perhaps best illustrated with case law citing this very aspect of *Gray II*.

Beyond the cases cited by the Eleventh Circuit in its order to vacate and

remand, *see* doc. 131, at 10, the court is compelled to discuss two other cases.[5]

First, in *C.B. v. Sonora School District*, 691 F. Supp. 2d 1170, 1179-82 (E.D. Cal.

2010), the court engaged in a lengthy factual analysis of *Gray II* and concluded

that "[g]iven these allegations and the case authority cited above, it is arguable

that the handcuffing of Plaintiff violated his Fourth Amendment rights and, at the

time of the violation, the constitutional right was clearly established."  Next, in

*E.W. v. Wake County Board of Education*, No. 5:09-CV-198-FL, 2010 WL

1286218, at *7 (E.D.N.C. March 30, 2010), the court found no violation of

plaintiff's Fourth Amendment rights partly because plaintiff was not bound in any

way.  *Id.* (citing and discussing in parenthetical *Gray II*).  These two cases, along

with those cited in *Gray II*, establish that, beyond vindicating Gray's own right to

be free from unreasonable search and seizures, other courts have utilized the

---

[5] "If the district court on remand chooses to do a headcount of citations to our *Gray II* decision, it should count only those that cite the *Gray II* decision for its Fourth Amendment holding."  Doc. 131, at 12.

precise legal issue decided in *Gray II* to vindicate the rights of litigants in at least four separate cases.

In closing, the court finds that *Gray II* enhanced Fourth Amendment protections in the schoolhouse context because, among other reasons, the decision serves as the only Eleventh Circuit case to find a school-based seizure "unreasonable," helps clarify the established law for constitutional violations in the schoolhouse, and, in doing so, places school officials on notice of certain conduct that violates the Constitution.  Accordingly, while Gray failed to obtain a large monetary sum from her litigation, she secured social benefits and instigated legal change based on the significant issue decided in *Gray II*.  Therefore, unlike the plaintiff in *Farrar*, Gray's "success" far exceeds her receipt of nominal damages.

C.    *Public Purpose Accomplished*

Beyond providing defined standards for the protection of Fourth Amendment rights in the schoolhouse, *Gray II* and the award of attorney's fees also achieves the vital public purpose of deterring civil rights violations.  *Gray II*'s impact far exceeds that of the plaintiff in *Farrar*, for which Justice Thomas' opinion establishes that when a plaintiff only recovers nominal damages under one of the civil rights statutes, he or she *probably* did not significantly enhance the

protection of civil rights, and the judge or jury properly determined that the "victory" was a mere technicality. *See* 506 U.S. at 115.  Rather, *Gray II* is more akin to the scenario outlined by Justice O'Connor's concurrence in which she recognizes that, for a minority of cases, receipt of nominal damages may mean more than a mere technical victory. *See id.* at 121-22.  Put differently, while the individual plaintiff may not have suffered greatly if viewed solely in a monetary damages sense, the issue prevailed upon "ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory." *Id.* at 122.  One method of vindicating these important rights is the use of monetary deterrents through attorney's fees, especially in situations where, as Justice O'Connor recognized, the specific verdict or holding teaches a valuable lesson because it carries a discernable meaning that identifies "the kind of lawless conduct that might be prevented." *Id.*

Critically, unlike *Farrar*, *Gray II* contains a discernable meaning and is not obtuse.  As stated previously, *Gray II* puts school resource officers on notice of clearly unconstitutional behavior—seizing young children when they pose no threat to themselves or others violates the Fourth Amendment—and deters that behavior *if* attorney's fees are awarded.  *See e.g.*, *Cabrera v. Jakabovitz*, 24 F.3d

372, 393 (2d Cir. 1994) (finding that the award of attorney's fees even though plaintiff only received nominal damages "serves as a clear warning to landlords that the law will not tolerate their use of brokers who discriminate invidiously"). Moreover, *Gray II* provides a clear warning that the law will not tolerate school resource officers unreasonably seizing young children in the absence of any safety threats.

Significantly though, this "tool" to vindicate important rights must contain some mechanism to ensure compliance. Indeed, there is no actual deterrent against violating a child's clearly established Fourth Amendment rights if the violator only has to pay nominal damages. Without imposing attorney's fees, so long as they do not severely injure a student, school officials have no deterrent against violating a student's clearly established Fourth Amendment rights. Accordingly, this case is the perfect situation for *Farrar*'s exception. Gray prevailed on a significant legal issue, but the litigation is such that "large sums of money are not at stake." 506 U.S. at 122 (O'Connor, J., concurring). The jury decided that Gray suffered no more than nominal injuries and therefore awarded nominal damages. That Gray only personally received $1 in damages does not in any way diminish the significance of her victory. Critically, by arguing against the award of fees, Bostic overlooks that "a plaintiff who obtains relief in a civil rights

lawsuit does so not for [her]self alone . . . ." *Rivera*, 477 U.S. at 575 (internal

quotations marks and citations omitted).  Here, the only way to make Gray's

success meaningful, and substantively benefit the public, is to provide a deterrent

(in the form of attorney's fees) against the illegal conduct.  *See id.* at 574

("Congress has determined that 'the public as a whole has an interest in the

vindication of the rights conferred by the statutes enumerated in § 1988, over and

above the value of a civil rights remedy to a particular plaintiff'") (quoting

*Hensley v. Eckerhart*, 461 U.S. 424, 444 (1983) (Brennan, J., concurring in part

and dissenting in part)).

    Finally, contrary to Bostic's contention, an award of attorney's fees does not

turn *Farrar*'s "statement around so that in a nominal damages case there would

usually be a fee award."  Doc. 131, at 12.  After all, a case ending with nominal

damages usually occurs when the plaintiff prevails on a technicality, and the

litigation offers no benefit to the public at large.  *See e.g.*, *Farrar*, 506 U.S. 103.

This case is the exception because, although it does not involve large personal

damages for the individual plaintiff, it offers a substantial benefit to the public at

large.  Therefore, the court **GRANTS** Gray's motion for attorney's fees, doc. 133.

The court next considers the appropriate sum for these fees.

## IV.  ANALYSIS FOR AMOUNT OF FEES AWARDED

Generally, to determine reasonable attorney's fees, the "court must multiply the number of hours reasonably expended by a reasonable hourly rate . . . . After determining the lodestar, the court may adjust the amount depending upon a number of factors, including the quality of the results and representation of the litigation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996).  The appropriate "hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997).

Moreover, here, the Eleventh Circuit gave explicit instructions regarding the calculation of fees, if this court found fees warranted.  *See* docs. 130, 131.  First, the Eleventh Circuit stated that, to the extent Gray seeks fees incurred for this appeal—Bostic's appeal of this court's July 29, 2008 fee award, docs. 117, 118—"her application is hereby TRANSFERRED to the district court for disposition as to entitlement and the amount, if any, to be awarded."  Doc. 130, at 4.  The Eleventh Circuit also held that "[t]o the extent that Gray seeks appellate attorney's fees for *Gray II* (the appeal from the district court's order dated December 12, 2005) and *Gray III* (the appeal from the judgment dated January 16,

2007), her applications are DENIED as untimely under 11th Cir. R. 39-2(a)." *Id.*

However, in regard to the first appeal, *Gray I*, the Eleventh Circuit found that "the

district court did not abuse its discretion by including that time within the

'reasonable hours' variable of the lodestar formula." Doc. 131, at 16.  Beyond

these specific instructions, the Eleventh Circuit's opinion does not criticize other

aspects of this court's prior lodestar calculation.  Accordingly, finding fees

warranted, *see supra*, the court incorporates the Eleventh Circuit's mandated

instructions into its July 29, 2008 finding of facts and corresponding calculations,

doc. 117.

This court previously found that a reasonable hourly rate for Gray's

attorneys T. Blake Liveoak, Gary Cody, H. Arthur Edge, W. Brian Collins, G.

Richard Boyles, Jr. is $200.00.  Doc. 117, at 2.  The court also found that a

reasonable hourly rate for Gray's attorney Curtis Peacock is $125.00.  *Id.* at 2-3.

Based on a new review of the time expended by Gray's attorneys, i.e. excluding

time spent on the *Gray II* and *Gray III* appeals, *see* doc. 114-2, the following

counsel expended the hours indicated:

  T. Blake Liveoak . . . . . . . . . . . 115[6]

---

[6] The court adheres to its previous finding of facts that "disallowed half (7) of the fourteen (14) hours claimed for services performed prior to the entry of his appearance in this case.  The Court has included four hours for deposition preparation on June 17, 2005, since this item was inadvertently omitted from the calculation of Liveoak's total hours." Doc. 117, at 3

H. Arthur Edge . . . . . . . . . . . . . . 29[7]

W. Brian Collins . . . . . . . . . . . 4.5[8]

G. Richard Boyles, Jr. . . . . . . . . 10

Curtis Peacock . . . . . . . . . . . . . 0

Gary Cody . . . . . . . . . . . . . . . . 20[9]

The court also adopts its previous finding of fact that "Gary Cody's law firm has

reasonably incurred $562.93 in expenses directly related to the prosecution of this

case." Doc. 117, at 3.  Moreover, based on a new review of the record, i.e.

excluding costs spent on the *Gray II* and *Gray III* appeals, *see* doc. 114-3, the

Collins, Liveoak & Boyles law firm reasonably incurred $789.60 in expenses

directly related to the prosecution of this case.

As such, it is hereby **ORDERED** that, for work done in this case up until

the point Judge Clemon awarded them fees (minus the time spent on the *Gray II*

n.4.  Moreover, this court previously found that "since [Gray] did not prevail on [her] claim against Sheriff Sexton, the hours to which his counsel would otherwise be entitled will be reduced by fifteen percent (15%)" and this "deduction will be made from the time attributable to the primary counsel, T. Blake Liveoak." Doc. 117, at 6; *id.* at 6 n.15.  The hourly amount listed for Liveoak includes this reduction.

[7] The court adheres to its previous finding of fact that "Edge's hours were overstated by two on the final calculation submitted for him." Doc. 117, at 3 n.5.

[8] The court adheres to its previous finding of fact that "Collins' hours were overstated by five and a half." Doc. 117, at 3 n.6.

[9] The court adheres to its previous finding of facts that "[b]ased on this judge's experience both as a judge and former civil rights lawyer, the twenty hours approved for Cody are modest indeed, considering that he alone represented the Plaintiff from the filing of the complaint until this Court's dismissal of the case was reversed by the Eleventh Circuit." Doc. 117, at 3 n.7.

and *Gray III* appeals), Plaintiff Laquarius Gray shall have and recover of Defendant Antonio Bostic the total sum of **Thirty Seven Thousand Fifty-two and 53/100 Dollars ($37,052.53)** as reasonable attorney's fees and reimbursement expenses to be paid as follows: (a) **$32,489.60 to the law firm of Collins, Liveoak & Boyles** and (b) **$4,562.93 to Attorney Gary P. Cody**.

The court also **GRANTS** Plaintiff Gray attorney's fees and expenses for work done on this most recent appeal to the Eleventh Circuit (i.e. Bostic's appeal of Judge Clemon's fee award), including the brief they filed in response to this court's order dated October 29, 2010, doc. 132, since Gray prevailed on the issue regarding the granting of attorney's fees to the prevailing party where, as here, a jury only awards nominal damages.  Counsel for Gray are **ORDERED** to submit their time records and their rates for the time period in question by **March 16, 2012**.  Bostic's objections, if any, to the hours and rates claimed are due by **March 23, 2012**, and Gray's reply, if any is due on **March 28, 2012**.

**DONE** the 5th of March, 2012.

_Abdul Kallon_
_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE